## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION, CINCINNATI

| | | |
|---|---|---|
| **BUZZ SEATING INC.** | ) | Case No. 1:16-cv-1131 |
| P.O. Box 31379 | ) | |
| Cincinnati, Ohio 45231 | ) | <u>Jury Demand Endorsed Herein</u> |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| | ) | **COMPLAINT FOR DAMAGES** |
| v. | ) | **AND DECLARATORY JUDGMENT** |
| | ) | |
| **ENCORE SEATING, INC.** | ) | |
| c/o Statutory Agent Chris Burgess | ) | |
| 5692 Fresca Drive | ) | **REQUEST FOR INJUNCTIVE** |
| La Palma, CA 90623 | ) | **RELIEF** |

Plaintiff Buzz Seating Inc. ("Buzz Seating" or "Plaintiff") hereby states for its Complaint against Defendant Encore Seating, Inc. ("Encore" or "Defendant") as follows:

### Parties, Jurisdiction and Venue

1.      Buzz Seating is an Ohio Corporation with its principle place of business located at 623 North Wayne Avenue, Cincinnati, Ohio. Buzz Seating manufactures, markets, sells and delivers chairs, including office chairs nationwide.

2.      Encore is a California Corporation with its principle place of business located at 5692 Fresca Drive, La Palma, California (CA. Entity No. C2122680). Encore manufactures, markets, sells and delivers furniture, including office furniture and chairs nationwide.

3.      This Court has exclusive and original jurisdiction over all federal claims in this action pursuant to 15 U.S.C.A § 1121, 28 U.S.C.A §§ 1331 and 1338(a).

1

4.    This Court also has supplemental jurisdiction over all state law claims in this action pursuant to 28 U.S.C.A § 1367 because the state law claims are so related to Buzz Seating's claims under federal law they form part of the same case or controversy and derive from a common set of operative facts.

5.    Defendant has maintained sufficient contacts with the State of Ohio for this Court to exercise jurisdiction over Defendant. Encore accepts purchases from Ohio customers, and ships or delivers its products, including its FLITE chair which is the subject of this litigation, to locations in Ohio. Defendant Encore also employs at least one Sales Representative to market and sell its products in Ohio: the Bielefeld Group located in Youngstown, Ohio. Encore's FLITE chair directly infringes on Plaintiff's superior national trademark rights for its FLITE chair. Therefore, this Court may properly exercise general personal jurisdiction over Defendant in this action.

6.    Venue is proper in this Court pursuant to 28 U.S.C.A § 1391(b) and (e) because (a) the acts of infringement and other wrongful conduct herein alleged occurred in this Southern District of Ohio; and (b) a substantial portion of the events giving rise to the claims asserted herein occurred in this Southern District of Ohio.

## NATURE OF CLAIMS

7.    Plaintiff Buzz Seating began operations in November 2003 in Cincinnati, Ohio. Plaintiff manufactures, advertises, markets, distributes and sells a number of lines and models of chairs throughout the United States.

8.    Buzz Seating sells many product lines, and collections of different types of office, desk and/or commercial chairs including task, side, companion, stacking, executive, conference

room, ergonomic, medical, urethane, and educational-specific chairs. Buzz Seating identifies its product lines by unique and particularly chosen names.

9.      One line of Buzz Seating's chairs bears the trademark, FLITE.

10.      Both Buzz Seating and Encore manufacture and sell commercial contract office seating and are direct competitors in the same market for the same customers.

11.      Buzz Seating and Encore advertise in the same trade and industry publications, attend the same trade shows and hire the same dealers and sales representatives.

12.      Defendant has and continues to manufacture, market, advertise, sell and distribute office chairs using an identical name, FLITE.

13.      Defendant is aware of Buzz Seating's FLITE trademark as the parties were engaged in an action before the Trademark Trial and Appeal Board ("TTAB"). However, despite a specific determination by the TTAB that Plaintiff has superior rights to the trademark FLITE and that a likelihood of confusion exists between the parties' trademarks, Defendant has continued to unlawfully use the FLITE trademark to manufacture, market, advertise, sell and distribute its office chairs.

14.      Without injunctive relief, Defendant will continue to use a confusingly similar name, FLITE, to manufacture, market, advertise, sell and distribute its chairs.

15.      Defendant has infringed Buzz Seating's FLITE trademark, violated the Lanham Act, and engaged in unfair competition.

16.      Plaintiff brings this action to recover damages arising from the willful infringement of Buzz Seating's superior trademark FLITE by Encore and to enjoin Defendant's future infringement.

17.    Buzz Seating is seeking monetary damages permitted by the Lanham Act, state and common law, an accounting and imposition of a constructive trust upon Defendant's illegal profits, injunctive relief to prohibit Defendant's continuing infringement of Buzz Seating's FLITE trademark and attorney's fees and costs incurred by Defendant.

18.    Buzz Seating also seeks declaratory judgment pursuant to 15 U.S.C.A § 1052 and requests this Court declare (a) that Buzz Seating has the sole and exclusive right to use the mark FLITE for office chairs within the United States and (b) Encore is not entitled to any concurrent use of the mark FLITE for any office chairs within the United States.

## TRADEMARK TRIAL AND APPEAL BOARD OPPOSITION NO. 91210838

19.    Encore originally applied to register the mark FLITE (in standard characters) for "Office furniture, including chairs," in Class 20. Encore's first application was filed on November 15, 2011 and assigned Application Serial No. 85473489.[1]

20.    On May 29, 2013, Buzz Seating filed a Notice of Opposition to Encore's Application Serial No. 85473489 ("Opposition") with the TTAB on the grounds that a likelihood of confusion with the parties' identical marks existed due to Buzz Seating's prior use of the mark for its chairs.

21.    Buzz Seating specifically opposed Encore's registration of the mark FLITE because Encore's mark is identical to Buzz Seating's mark, the class of goods and the nature of the goods is the same, the parties sold through the same or similar channels of trade, had the same or similar distributors and dealers, had the same or similar customers, and the existence of actual customer confusion between the parties' goods bearing the same mark.

22.    The TTAB assigned Buzz Seating's Opposition No. 91210838.

---

[1] Encore's Application was based on Section 1(b) of the Trademark Act (intent-to-use).

23.    Buzz Seating also filed a trademark application, Serial No. 85860663, to register the mark FLITE for a "side chair" in Class 20 on February 26, 2013. Buzz Seating's Application No. 85860663 is pending as it was suspended due to the Opposition.

24.    The Opposition proceeded and the parties engaged in extensive discovery including exchanging Interrogatories, Request for Production of Documents, and depositions.

25.    The parties submitted additional evidence for consideration via respective notice of reliance and briefed their respective arguments in final merit briefs submitted to the TTAB.

26.    The TTAB held a final hearing wherein all evidence and the parties' final merit briefs were reviewed.

27.    The TTAB rendered its written opinion on the merits of the Opposition on August 23, 2016 determining a likelihood of confusion existed between Buzz Seating's previously used, and not abandoned, mark FLITE and Encore's mark FLITE for the parties' respective goods. A true and accurate copy of the TTAB Opinion rendered in Opposition No. 91210838 is attached hereto as Exhibit A.

## TTAB OPINION IN OPPOSITION NO. 91210838

28.    When rendering its opinion in the Opposition, the TTAB noted the record included testimony by deposition, with exhibits, of Buzz Seating's president, Daniel O'Hara and Encore's Executive Vice President and co-owner, Christopher Burgess. See, Exhibit A, p. 2.

29.    The TTAB also noted the record contained various documents submitted by Encore by notice of reliance including, Buzz Seating's responses to Encore's First Set of Interrogatories and Requests for Production of Documents and print outs from websites and the record also contained documents submitted by Buzz Seating, in rebuttal, of excerpts from printed publications and webpages. See, *Id*.

30. Upon reviewing the record, and the parties' briefs, the TTAB sustained Buzz Seating's Opposition and specifically held:

      A.  Buzz Seating proved the first element of its likelihood of confusion claim by establishing its prior rights to the mark FLITE for side chairs; and,

      B.  In accordance with *In re E. I. DuPont DeNemours & Co.*, 476 F.2d 1357, 1361, 177 U.S.P.Q. 563, 568 (C.C.P.A. 1973), Encore's use of FLITE for "Office furniture, including chairs" is likely to cause confusion with Buzz Seating's previously used and not abandoned mark FLITE for stacking or side chairs. See, Exhibit A, pgs. 9-15.

## BUZZ SEATING'S PRIOR USE OF FLITE MARK

31. Buzz Seating first used the FLITE mark on a line of companion chairs, also known as side chairs or stacking chairs, in December 2003.

32. Buzz Seating's first sale and first sale in commerce of FLITE chairs was to a dealer in Charlotte, North Carolina on January 23, 2004.

33. Buzz Seating's line of FLITE chairs has four models.

34. Buzz Seating's line of FLITE chairs has a label with the word "Flite" affixed to the underside of the chair.

35. Buzz Seating has adopted and used the mark FLITE in commerce for chairs continuously since, at least, January 23, 2004.

36. Buzz Seating has continuously sold its FLITE chair since introducing the goods into commerce since, at least, January 23, 2004.

37.     Buzz Seating utilizes printed copies of its catalogs, price books, brochures, email blasts, mailings, trade shows and non-exclusive independent sales agents and representatives to advertise, market, promote, sell and to build and foster goodwill of its FLITE chair nationwide.

38.     Buzz Seating created and has consistently used the website www.flitechair.com to advertise, market, promote and sell its FLITE chairs since October 29, 2012.

39.     From January 1, 2004 to June 17, 2014, Buzz Seating sold its FLITE chairs in 36 states and Puerto Rico with sales totaling $1.182 million. See, Exhibit A, pgs. 5-6.[2]

40.     Since its first sale of its FLITE chairs through November 2016, Buzz Seating has sold and/or delivered its FLITE chairs in 42 states and Puerto Rico with sales totaling $1,420,389.25.[3]

41.     Encore's first sale of its FLITE chairs was December 28, 2011.

42.     Between December 28, 2011 and November 2015, Encore's sales of its FLITE chairs totaled $1.275 million.

43.     The TTAB determined that "[c]learly, [Buzz Seating] began using its mark FLITE on chairs long prior to the filing date of [Encore's] application." See, *Id.*, pg. 7.

44.     Encore unsuccessfully attempted to argue that Buzz Seating's priority should be limited to certain states or that Buzz Seating had abandoned its mark FLITE in certain states. The TTAB was unconvinced and held that the testimony and evidence "make it clear that [Buzz Seating] has made continuous use of its mark FLITE on chairs in the United States since at least 2004." See, *Id.*, p. 9.

---

[2] The TTAB's finding of fact was based upon Daniel O'Hara Deposition Exhibit L, attached hereto as Exhibit B.
[3] Specifically, Buzz Seating has sold and/or delivered FLITE chairs to the following states since January 1, 2004: Alabama, Arizona, California, Colorado, Connecticut, Delaware, Florida, Georgia, Hawaii, Idaho, Illinois, Indiana, Iowa, Kentucky, Louisiana, Maine, Maryland, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada, New Hampshire, New Jersey, New York, North Carolina, Ohio, Oregon, Pennsylvania, Rhode Island, South Carolina, South Dakota, Texas, Utah, Vermont, Virginia, Washington, Wisconsin, and Wyoming.

45.     The TTAB affirmatively held Buzz Seating had prior use of the mark FLITE for side chairs and had not abandoned any rights in the mark FLITE.

### LIKELIHOOD OF CONFUSION BETWEEN BUZZ SEATING'S FLITE MARK AND ENCORE'S FLITE MARK

46.     The TTAB determined Encore's use of FLITE for "Office furniture, including chairs" is likely to cause confusion with Buzz Seating's previously used and not abandoned mark FLITE for stacking or side chairs. See, *Id.*, p. 15.

47.     In determining a likelihood of confusion existed, the TTAB evaluated the evidence in the record to determine which party's position was favored by the relevant *du Pont* factors. See, *In re E. I. DuPont DeNemours & Co.*, 476 F.2d 1357, 1361, 177 U.S.P.Q. 563, 568 (C.C.P.A. 1973).

48.     The TTAB evaluated all relevant *du Pont* factors in the Opposition.

49.     The TTAB made specific findings of fact and conclusions of law regarding (a) the similarity of the marks; (b) the similarity of the goods; (c) the similarity of channels of trade in which the goods are offered; (d) the conditions under which sales are made and the class of purchasers to whom the sales are made; and (e) the "13th" factor of applicant's bad faith and the existence of actual confusion.

50.     Based upon the TTAB's analysis of the *du Pont* factors, it determined Encore's use of the mark FLITE for "Office furniture, including chairs" is likely to cause confusion with Buzz Seating's previously used and not abandoned mark FLITE for stacking or side chairs. See, Exhibit A, p. 15.

### Similarity of the Marks

51.     Encore uses the mark FLITE, and Buzz Seating uses the mark FLITE.

52.    Encore admitted the marks are identical in its Response to the Notice of Opposition. See, *Id.*, p. 2.

53.    The TTAB held the parties' marks are identical; thus, this *du Pont* factor weighs in Buzz Seating's favor and a finding of likelihood of confusion. See, *Id.*, p. 11.

<u>Similarity of the Goods</u>

54.    Encore's goods for its FLITE mark are "Office furniture, including chairs."

55.    Buzz Seating's goods for its FLITE mark are side chairs.

56.    The TTAB held that "office chairs" encompass Buzz Seating's chairs, thus, the parties' goods are identical. See, *Id.*, p. 11.

57.    Encore argued that its chairs were different because they are "premium executive chairs sold to corporate customers for use behind a desk or in a conference room," and that "a person purchasing a stacking chair such as [Buzz Seating's] Flite chairs would not buy an executive chair or vice-versa." See, *Id.*, p. 11. Encore's argument failed.

58.    The TTAB held the specific difference between Encore's executive chairs and Buzz Seating's side chairs does not avoid a likelihood of confusion. See, *Id.*, p. 12. Specifically, the TTAB held that "[t]he question is not whether consumers will confuse the chairs, but whether they will be confused as to the source of the goods." (*Citation omitted*). *Id.*

59.    The TTAB further opined that consumers familiar with Buzz Seating's FLITE side chair are likely to believe Buzz Seating has expanded its FLITE line upon seeing the identical mark FLITE for an executive chair. *Id.*

60.    Thus, the TTAB determined this *du Pont* factor weighs in Buzz Seating's favor and a finding of likelihood of confusion. *Id.*

<u>Similarity of Channels of Trade the Goods are Offered</u>

61.     The TTAB determined the parties' legally identical goods must be presumed to be sold in the same channels of trade; and further held the parties both sell their chairs through independent representatives to dealers or distributors who sell to end users as well as corporate consumers. See, Exhibit A, p. 12.

62.     Therefore, the TTAB held this *du Pont* factor of the similarity or dissimilarity of established, likely to continue channels of trade also favored Buzz Seating. See, *Id.*, p. 13.

<u>Conditions Sales are Made and the Class of Purchasers to Whom the Sales are Made</u>

63.     Encore attempted to argue its FLITE chairs were purchased by different classes of purchasers. However, this argument was rejected.

64.     The TTAB's analysis for conditions of purchase was based on Buzz Seating's common law rights, rather than on theoretical purchasers based on the identification in a registration. See, *Id.*, p. 13.

65.     The TTAB held it was assumed the ultimate purchasers of either party's chairs are companies or institutions that would exercise care in their purchasing decisions. *Id*.

66.     The TTAB further held that any favor this *du Pont* factor may weigh to Encore, alone, was not sufficient to outweigh the identical marks, legally identical goods and legally identical channels of trade. *Id*.

<u>Other Factors: Bad Faith and Actual Confusion</u>

67.     The TTAB held that whether or not Encore acted in good faith when it adopted its mark FLITE was neutral and did not favor either party's position. See, Exhibit A, p. 14.

68.     The TTAB also determined evidence regarding instances of actual confusion was similarly neutral and did not favor either party's position. See, *Id.*, p. 15.

<u>Encore Did Not Seek Review or Appeal the TTAB Decision</u>

69. Encore did not seek reconsideration or modification through the TTAB and did not file an appeal in federal court seeking review of the TTAB's August 23, 2016 Decision.

70. Any request for reconsideration or modification of a decision issued after final hearing before the TTAB must be filed within one month from the date of decision. See, TTAB Rule §2.129(c).

71. Pursuant to 37 C.F.R. §2.145, if a party does not file a request for reconsideration, they can file an appeal to the United States Court of Appeal for the Federal Circuit within sixty-three days from the date of the final decision of the TTAB.

72. The time to seek reconsideration or modification or file an appeal of the TTAB's August 23, 2016 Decision has lapsed; therefore, the Decision is final.

73. The TTAB's decision regarding the issue of Buzz Seating's priority of use and the likelihood of confusion between the parties' identical marks must be given preclusive effect because these issues were actually litigated and necessarily determined by the TTAB.

<u>CONCURRENT USE APPLICATION FILED BY ENCORE</u>

74. On November 22, 2016, Encore filed a second application to register the mark FLITE (in standard characters) in Class 20 for "executive office furniture, namely, adjustable height executive chairs which rotate and tilt and have armrests, for desks and conference room tables sold through executive office furniture dealers, interior designers, and architects." See, Exhibit C.

75. Encore's Application was filed under Section 1(a) (use in commerce) of the Trademark Act and assigned Serial No. 87245914.

76. Encore's Application Serial No. 87245914 claims it first used the mark FLITE in commerce on October 25, 2011. *Id*.

77. Despite the TTAB's clear and unequivocal determination a likelihood of confusion exists, Encore's Application Serial No. 87245914 affirmatively confirms it is continuing to use the FLITE mark to manufacture, market, advertise, sell and distribute its office chairs in the same industry and to the same customers Buzz Seating manufactures, markets, advertises, sells and distributes its FLITE office chairs.

78. Encore's Application Serial No. 87245914 seeks an allowance for the concurrent use of the mark FLITE.

79. Encore's Application Serial No. 87245914states the concurrent use information is as follows:

A. Encore's goods are "executive office furniture, namely, adjustable height executive chairs which rotate and tilt and have armrests, for desks and conference room tables sold through executive office furniture dealers, interior designers, and architects;"

B. The geographic area in which "[Encore] is using the mark in commerce in (sic) the states of Alaska, Arizona, Arkansas, California, Colorado, Hawaii, Idaho, Iowa, Kansas, Louisiana, Minnesota, Missouri, Montana, Nebraska, Nevada, New Mexico, North Dakota, Oklahoma, Oregon, South Dakota, Texas, Utah, Washington, Wyoming;" and,

C. The mode of use for which [Encore] seeks registration is stated in the identification of goods.

80. Encore's Application Serial No. 87245914 identifies Buzz Seating as the concurrent user. See, *Id*.

81.    Encore's Application Serial No. 87245914 identifies Buzz Seating's goods as a "side chair." *Id.*

82.    Encore's Application Serial No. 87245914 acknowledges Buzz Seating's Application Serial No. 85860663 for the trademark FLITE filed on February 26, 2013.[4]

83.    Encore's Application Serial No. 87245914 states the geographic areas in which Buzz Seating is using the mark in commerce as Ohio, <u>only</u>, that the mode of use by Buzz Seating is unknown by Encore, and the period of use by Buzz Seating is not fully known by Encore. See, *Id.*

84.    Defendant has no rights to the concurrent use of FLITE.

85.    Encore's attempt to limit Buzz Seating's nationwide rights to its superior mark FLITE for chairs failed before the TTAB. See, Exhibit A, pgs. 7-9.

86.    It has been preclusively determined that Buzz Seating has priority of use of the mark FLITE and that there is a likelihood of confusion between the parties' identical marks for office chairs.

87.    Encore provided false and misleading information in its Application No. 87245914 contrary to evidence exchanged in the TTAB proceeding and the findings of fact and conclusions of law set forth in the TTAB Decision.

88.    When filing an application to register a trademark, the filing party must acknowledge a declaration where, in sum, the filing party declares all statements are true and is explicitly warned that "willful false statement and the like are punishable by fine or imprisonment, or both, and that such willful statement and the like may jeopardize the validity of the application or any registration resulting therefrom."

---

[4] A copy of Buzz Seating's Application Serial No. 85860663 is attached hereto as Exhibit D.

89.     When Encore filed Application No. 87245914, it acknowledged and declared that all statements were true and acknowledged the warning that "willful false statement and the like are punishable by fine or imprisonment, or both, and that such willful statement and the like may jeopardize the validity of the application or any registration resulting therefrom." See, Exhibit C.

90.     Despite over three (3) years litigating the Opposition, wherein the parties exchanged hundreds of documents, including evidence of Buzz Seating's sales of its FLITE chairs from January 1, 2004 to June 17, 2014 in 36 states and Puerto Rico totaling $1.182 million, Encore affirmatively made the false and misleading statement that Buzz Seating is using its mark FLITE in Ohio, only. See, *Id.*

91.     Encore is well-aware that Buzz Seating's geographical territory extends well-beyond Ohio as this issue was litigated, at length, in the Opposition and the TTAB Decision confirmed Buzz Seating's nationwide rights. See, Exhibit A, pgs. 6-9.

92.     Encore affirmatively made a second false and misleading statement that it does not know the mode of use of Buzz Seating's mark FLITE.

93.     This statement was made despite evidence provided to Encore in the Opposition and the TTAB's determination that Buzz Seating (along with Encore) sells its chairs through independent representative to dealers or distributors who then sell to the ultimate users, the parties' competing chairs can be sold by the same dealers or distributors to the same customers, and Buzz Seating's customers include "corporate America" and Encore's customers includes "corporate companies." See, *Id.*, p. 13.

94.     Encore affirmatively made a third false and misleading statement that it does not know the period of use of Buzz Seating's mark FLITE.

95. Encore is aware Buzz Seating has made continuous use of its FLITE mark since 2004 and has not abandoned its mark as this issue was litigated in the Opposition and determined by the TTAB. See, *Id*., p. 9.

96. Encore affirmatively made a fourth false and misleading statement that its geographic area does not include Ohio.

97. Encore presented evidence to Buzz Seating and the TTAB verifying it had sold its FLITE chairs to, at least, thirty-nine (39) customers in Ohio.

98. Encore's blatant distortion or deliberate vagueness is a willful attempt to present false information to unlawfully obtain some right to Buzz Seating's FLITE mark.

99. Buzz Seating has not, and will not, agree to any concurrent use of its superior mark FLITE for any office chair manufactured, sold, marketed or distributed by Encore within the United States.

100. Any concurrent use of FLITE mark by Encore for office chairs, of any type, nature or configuration, within the United States will cause dilution by blurring or dilution by tarnishment.

CLAIM ONE
(15 U.S.C.A § 1114 – Trademark Infringement)

101. Plaintiff incorporates by reference all statements, facts and allegations set forth in paragraphs 1-100 as if fully restated herein and further states as follows:

102. Defendant's activities constitute infringement of Buzz Seating's superior trademark rights for the mark FLITE in violation of the Lanham Trademark Act, including, but not limited to, 15 U.S.C.A § 1114(1).

103.    The standard for determining a likelihood of confusion for purposes of registration is the same standard as likelihood of confusion for purposes of infringement. *B & B Hardware, Inc. v. Hargis Indus., Inc.*, 135 S. Ct. 1293, 1307, 191 L. Ed. 2d 222 (2015).

104.    The parties litigated and the TTAB affirmatively determined Buzz Seating's priority of use and the likelihood of confusion between the parties' identical marks for chairs.

105.    The TTAB's determinations regarding Buzz Seating's priority of use and the likelihood of confusion between the parties' identical marks must be given preclusive effect.

106.    Buzz Seating manufactures, advertises, markets, distributes and sells its office chairs under the FLITE mark as a means by which Buzz Seating's office chairs are distinguished from the office chairs of others in the same or related markets, fields and/or Buzz Seating's competitors.

107.    Buzz Seating's long, continuous use of the FLITE mark has come to mean and is understood by its customers, end users, and the public to signify Buzz Seating's products.

108.    Buzz Seating and Encore sell similar goods and are direct competitors.

109.    Defendant's infringing use and continued use of the FLITE mark has been affirmatively determined likely to cause confusion, mistake or deception as to the source or origin of the goods. See, Exhibit A, p. 15.

110.    Defendant's activities are likely to lead the public to conclude, mistakenly, that the infringing products Defendant manufactures, advertises, markets, offers and distributes originate with or are authorized by Buzz Seating to the damage and harm of Buzz Seating. *Id.*

111.    Upon information and belief, Defendant continues to manufacture, offer, advertise, market or distribute infringing products with the purpose of misleading, deceiving or

confusing customers and the public as to the origin and authenticity of the infringing products and in order to trade on Buzz Seating's business reputation and good will. See, Exhibit C.

112.    Defendant acted, and continues to act, with willful and reckless disregard of Buzz Seating's superior nationwide rights to the FLITE mark.

113.    As a result of Defendant's wrongful conduct, Buzz Seating has been and will continue to be damaged.

114.    As a result of Defendant's wrongful conduct, Defendant is liable to Buzz Seating for trademark infringement, 15 U.S.C.A. § 1114(1). Buzz Seating has suffered damages, and is entitled to recover damages, including, any and all profits Defendant made as a result of its wrongful conduct and infringement. 15 U.S.C.A § 1117(a).

115.    In the first four years of sales of its FLITE chairs, Encore's sales totaled $1.275 million. Encore continued to sell its FLITE chairs after November 2015, therefore, the total sales of Encore's FLITE chairs is believed to be greater than $1.275 million.

116.    Defendant's total profit as a result of its wrongful conduct and infringement is unknown at this time.

117.    Therefore, Plaintiff Buzz Seating is entitled to judgment against Defendant for an amount to be determined at trial.

118.    Because Defendant's infringement of Buzz Seating's FLITE mark was willful within the meaning of the Lanham Act, the award of actual damages and profits should be trebled pursuant to 15 U.S.C.A § 1117(b). Alternatively, Buzz Seating is entitled to statutory damages pursuant to 15 U.S.C.A § 1117(c).

119.    Buzz Seating is also entitled to injunctive relief pursuant to 15 U.S.C.A § 1116(a), and entitled to an order compelling the impounding of all infringing products bearing the FLITE

17

mark being manufactured, used, offered, marketed or distributed by Defendant pursuant to 15 U.S.C.A § 1116, subsections (a) and (d)(1)(A) and 28 U.S.C.A § 1651. Buzz Seating has no adequate remedy at law for Defendant's wrongful conduct because, among other issues, (a) Buzz Seating's FLITE mark is unique and valuable property that has no readily determinable market value; (b) Defendant's infringement constitutes harm to Buzz Seating wherein Buzz Seating could not be made whole by any monetary award; (c) it has been determined Defendant's mark is likely to cause confusion with Buzz Seating's superior mark yet Defendant continues to manufacture, use, offer, market or distribute goods under the FLITE mark; (d) if Defendant's wrongful conduct is allowed to continue, the public is likely to become further confused, mistaken or deceived as to the source, origin or authenticity of the infringing products bearing the FLITE mark; and (e) Defendant's wrongful conduct, and the resulting damage to Buzz Seating, is continuing.

120.    Buzz Seating is entitled to recover its attorneys' fees and costs of suit pursuant to 15 U.S.C.A § 1117.

CLAIM TWO
(15 U.S.C.A. §1125, *et seq.* – False Designation of Origin, False Description
and Representation of Buzz Seating's FLITE Mark)

121.    Plaintiff incorporates by reference all statements, facts and allegations set forth in paragraphs 1-120 as if fully restated herein and further states as follows:

122.    Buzz Seating manufactures, advertises, markets, distributes and sells its office chairs under the FLITE mark as a means by which Buzz Seating's office chairs are distinguished from the office chairs of others in the same or related markets, fields and/or Buzz Seating's competitors.

18

123.    Because of Buzz Seating's long, continuous use of the FLITE mark, the FLITE mark has come to mean and is understood by its customers, end users, and the public to signify Buzz Seating's products.

124.    Defendant has unlawfully and wrongly used Buzz Seating's FLITE mark in connection with its goods even after the Buzz Seating's Opposition to Encore's Application Serial No. 85473489 was sustained due to the likelihood of confusion between the parties' identical marks. See, Exhibit A, p. 15.

125.    Encore's continued willful infringement of the FLITE mark in spite of its awareness of Buzz Seating's superior nationwide rights to the FLITE mark and a clear determination that a likelihood of confusion exists constitutes use of a "Counterfeit Mark" as defined in 15 U.S.C.A § 1116(d)(1)(B)(i).

126.    Upon information and belief, Defendant engaged in such wrongful conduct with the willful purpose of misleading, deceiving or confusing customers and the public as to the origin and authenticity of the infringing products in order to trade on Buzz Seating's business reputation and good will. Defendant's conduct constitutes (a) false designation of origin; (b) false or misleading description; and (c) false or misleading representation, in violation of Section 43(a) of the Lanham Trademark Act, 15 U.S.C.A §1125(a).

127.    Defendant's wrongful conduct is likely to continue unless restrained and enjoined.

128.    As a result of Defendant's wrongful conduct, Buzz Seating has been and will continue to be damaged.

129.    Buzz Seating is entitled to injunctive relief and entitled to an order compelling the impounding of all infringing products bearing the FLITE mark being manufactured, used, offered, marketed or distributed by Defendant. Buzz Seating has no adequate remedy at law for

Defendant's wrongful conduct because, among other issues, (a) Buzz Seating's FLITE mark is unique and valuable property that has no readily determinable market value; (b) Defendant's infringement constitutes harm to Buzz Seating wherein Buzz Seating could not be made whole by any monetary award; (c) if Defendant's wrongful conduct is allowed to continue, the public is likely to become further confused, mistaken or deceived as to the source, origin or authenticity of the infringing products bearing the FLITE mark; and (d) Defendant's wrongful conduct, and the resulting damage to Buzz Seating, is continuing.

130.    Buzz Seating prays for judgment in its favor and an award of damages in an amount to be determined at trial including an award of its attorneys' fees and any other relief this Court deems just and equitable.

CLAIM THREE
(Violation of the Ohio Deceptive Trade Practice Act –
Ohio Revised Code Chapter § 4165.01, *et seq.*)

131.    Plaintiff incorporates by reference all statements, facts and allegations set forth in paragraphs 1-130 as if fully restated herein and further states as follows:

132.    Defendant's actions constitute unfair, unconscionable and/or deceptive trade practices in the course of business and in the conduct of trade or commerce in violation of the Ohio Deceptive Trade Practices Act, Ohio Revised Code § 4165.01, *et seq*.

133.    Defendant's actions have caused and will continue to cause a likelihood or probability of confusion or misunderstanding as to the source, affiliation, sponsorship, approval or certification of products marketed, sold, and distributed bearing Buzz Seating's FLITE mark. See, Exhibit A, p. 15.

20

134.    As a direct and proximate result of Defendants' wrongful conduct, Plaintiff has suffered damages and will continue to suffer damage to its good will and reputation which has resulted in loss to Buzz Seating and an illicit gain of profit to Defendant in an amount which is unknown but shall be determined at trial.

135.    Buzz Seating is also entitled to recover its attorneys' fees pursuant to Ohio Revised Code § 4165.03(B) and any other relief this Court deems just and equitable.

<u>CLAIM FOUR</u>
<u>(Unfair Competition)</u>

136.    Plaintiff incorporates by reference all statements, facts and allegations set forth in paragraphs 1-135 as if fully restated herein and further states as follows:

137.    Defendant's conduct constitutes unfair competition pursuant to Ohio common law pursuant to the deceptive, fraudulent, willful and wrongful conduct alleged herein.

138.    As a direct and proximate result of Defendant's wrongful conduct, Plaintiff has suffered damages and will continue to suffer damage to its good will and reputation which has resulted in loss to Buzz Seating and an illicit gain of profit to Defendant in an amount which is unknown but shall be determined at trial.

139.    Buzz Seating also prays for an award of attorneys' fees and any other relief this Court deems just and equitable.

<u>CLAIM FIVE</u>
<u>(Accounting)</u>

140.    Plaintiff incorporates by reference all statements, facts and allegations set forth in paragraphs 1-139 as if fully restated herein and further states as follows:

141.    Buzz Seating is entitled, pursuant to 15 U.S.C. § 1117, to recover any and all profits of Defendant that are attributable to its acts of infringement.

142.    Buzz Seating is entitled, pursuant to 15 U.S.C. § 1117, to actual or statutory damaged sustained by virtue of Defendant's acts of infringement.

143.    The amount of damages and money due from Defendant to Buzz Seating is unknown and cannot be ascertained without a detailed accounting by Defendant of the precise number of units of infringing products manufactured, offered for sale and/or sold and distributed by Defendant.

CLAIM SIX
(Declaratory Judgment)

144.    Plaintiff incorporates by reference all statements, facts and allegations set forth in paragraphs 1-143 as if fully restated herein and further states as follows:

145.    Buzz Seating seeks declaratory judgment pursuant to 15 U.S.C.A § 1052 and requests this Court declare (a) that Buzz Seating has the sole and exclusive right to use the mark FLITE for office chairs within the United States and (b) Encore is not entitled to any concurrent use of the mark FLITE for any office chairs within the United States.

**PRAYER FOR RELIEF**

**WHEREFORE**, Buzz Seating respectively prays for judgment in its favor against Defendant Encore on each claim for relief asserted herein and further request an award of damages against Defendant Encore as follows:

(A)    Enter judgment against Defendant Encore finding Defendant willfully infringed Buzz Seating's rights to the FLITE mark in violation of 15 U.S.C.A § 1114;

(B)    Enter judgment against Defendant Encore finding Defendant committed and continues to commit acts of false designation of origin, false or misleading description of fact, and false or misleading representation against Buzz Seating, in violation of 15 U.S.C.A § 1125(a);

22

(C)     Enter judgment against Defendant Encore finding Defendant engaged in unfair and deceptive trade practices and unfair methods of competition in violation of Ohio Revised Code Section § 4165.01, *et seq*, and Ohio common law;

(D)     Enter judgment against Defendant Encore finding Defendant otherwise injured the business reputation and business of Buzz Seating by its unlawful acts and conduct, including but not limited to, the acts and conduct set forth herein;

(E)     Enter an order of impoundment pursuant to 15 U.S.C.A § 1116(d)(1)(A) and 28 U.S.C.A § 1651(a);

(F)     Enter an order declaring Defendant Encore hold in trust, as constructive trustee for the benefit of Buzz Seating, all illegal profits obtained through the manufacture, distribution and sale of infringing products and requiring Defendant to provide Buzz Seating a full and complete accounting of all amounts due and owing Buzz Seating as a result of Defendant's illegal and unlawful activities;

(G)     Enter an order of declaratory judgment finding Buzz Seating has the sole and exclusive right to use the mark FLITE for office chairs within the United States and Encore shall not be entitled to any concurrent use of the mark FLITE for office chairs within the United States;

(H)     Enter an order that Defendant must pay Buzz Seating's general, special, actual, and statutory damages:

> (1) Buzz Seating's damages and Defendant's profits pursuant to 15 U.S.C.A § 504(b), trebled pursuant to 15 U.S.C.A § 1117(b), or alternatively, enhanced statutory damages, pursuant to 15 U.S.C.A § 1117(c); and,

23

(2) Buzz Seating's damages and Defendant's profits pursuant to Ohio Revised

Code § 4165.01, *et seq*. and Ohio common law.

(I)      Pre-judgment interest and post-judgment interest;

(J)      Attorney's fees, all costs and expenses associated with bringing this action and incurred in the Opposition; and

(K)      Any additional further relief as this Court deems just, equitable and/or necessary in the interest of justice.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues in this action.

*s/Theresa L. Nelson*
Theresa L. Nelson

Dated:   December 7, 2016        Respectfully submitted,

*s/Theresa L. Nelson*
Theresa L. Nelson (0072521)
STRAUSS TROY CO, LPA.
150 East Fourth Street
Cincinnati, OH 45202-4018
(513) 621-2120 – Telephone
(513) 241-8259 – Facsimile
E-mail: *tlnelson@strausstroy.com*

*Attorneys for Plaintiff Buzz Seating Inc.*

24