UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| Buzz Seating, Inc., <br><br>              Plaintiff, <br><br>  vs. <br><br>Encore Seating, Inc., <br><br>              Defendant. | Case No. 1:16-cv-1131 <br><br>Judge Susan J. Dlott <br><br>Order Granting Defendant's Motion to Dismiss, Granting in Part and Holding in Abeyance in Part Plaintiff's Motion to Dismiss Counterclaims, and Granting in Part and Denying in Part Plaintiff's Motion to Strike Affirmative Defenses |

      This matter is before the Court on Defendant's Motion to Dismiss Claim One of the Complaint (Doc. 7), Plaintiff's Motion to Dismiss Counterclaims (Doc. 12), and Plaintiff's Motion to Strike Affirmative Defenses (Doc. 13). Plaintiff Buzz Seating, Inc. ("Buzz Seating") is suing Defendant Encore Seating, Inc. ("Encore") for trademark infringement and related claims. (Doc. 1.) Encore has filed an Answer and Counterclaim against Buzz Seating seeking a declaratory judgment for non-infringement or priority of registration. (Doc. 8.) Encore now moves to dismiss the registered trademark infringement claim filed by Buzz Seating. Buzz Seating moves to strike two affirmative defenses and the counterclaims filed by Encore.

**I.     BACKGROUND**

**A.    Facts Alleged**

      The well-pleaded allegations of the Complaint and the Counterclaim are taken as true for purposes of the dismissal motions pending against each party.

      Buzz Seating manufactures, advertises, markets, distributes, and sells a number of models and lines of chairs, including office chairs. One of Buzz Seating's chair lines bears the

1

trademark FLITE. Buzz Seating first sold the FLITE chairs in commerce in January 2004. Encore also manufactures, advertises, markets, distributes, and sells office chairs. It has sold an executive chair bearing the FLITE mark since December 2011. Buzz Seating and Encore advertise in the same publications, attend the same trade shows, and hire the same dealers and sales representatives.

**B.     Administrative Proceedings**

The parties have disputed the right to use the mark FLITE before the Trademark Trial and Appeal Board ("TTAB"). On November 15, 2011, Encore applied to register the trademark FLITE for "Office furniture, including chairs" in Class 20 and was assigned Application Serial No. 85473489.[1] On February 26, 2013, Buzz Seating filed Application Serial No. 85860663 to register the trademark FLITE for a side chair in Class 20. On May 29, 2013, Buzz Seating filed a Notice of Opposition to Encore's Application, Opposition No. 91210838, on the grounds that a likelihood of confusion existed due to Buzz's prior use of the FLITE mark. The TTAB suspended Buzz Seating's Application while it adjudicated Buzz Seating's Opposition to Encore's Application.

The parties engaged in discovery and participated in a hearing before the TTAB on the Opposition. On August 23, 2016, the TTAB issued its decision sustaining Buzz Seating's Opposition to Encore's Application. (Doc. 1-1 at PageID 26–40.) The TTAB's decision will be discussed in more depth in the Analysis below as necessary, but its conclusion was as follows:

> In view of the marks being identical, and the goods and channels of trade being legally identical, we find that Applicant's use of FLITE for "Office furniture, including chairs" is likely to cause confusion with Opposer's previously used and not abandoned mark FLITE for stacking or side chairs.

---

[1] According to the U.S. Patent and Trademark Office, Class 20 goods include furniture. *See* https://www.uspto.gov/trademark/trademark-updates-and-announcements/nice-agreement-tenth-edition-general-remarks-class.

(*Id.* at PageID 40.)

Encore did not appeal or seek reconsideration of the TTAB decision. Rather, on November 22, 2016, Encore filed a concurrent use application, Application Serial No. 87245914, to register the mark FLITE in Class 20 for "executive office furniture, namely, adjustable height executive chairs which rotate and tilt and have armrests, for desks and conference room tables sold through executive furniture dealers, interior designers, and architects." (*Id.* at PageID 56.) Application Serial No. 87245914 calls for Encore to use the mark FLITE only in twenty-four specific states and would allow for concurrent use of the mark FLITE by Buzz Seating in Ohio for side chairs. (*Id.* at PageID 57.) Subsequently, on December 1, 2016, Encore filed a Notice of Abandonment with the U.S. Patent and Trademark Office ("USPTO") for its first application, Application Serial No. 85473489. (Doc. 14-1 at PageID 175.)

Turning back to Buzz Seating's efforts to register the mark FLITE, on February 15, 2017, the USPTO issued a Notice of Publication concerning Buzz Seating's Application Serial No. 85860663. (Doc. 14-1 at PageID 172.) Buzz Seating asserts in a brief that on April 6, 2017 Encore filed an Opposition to its Application Serial No. 85860663. (Doc. 14 at PageID 167.) However, it has not provided a citation to the record or a Government publication supporting that assertion.

**C.    Judicial Proceedings**

    **1.    Buzz Seating's Complaint**

Buzz Seating filed the instant suit against Encore on December 7, 2016 for damages and injunctive relief. Buzz Seating asserts the following causes of action in the Complaint:

Claim One:  15 U.S.C. § 1114—Trademark Infringement;

Claim Two:  15 U.S.C. § 1125—False Designation of Origin, False Description
and Representation of Buzz Seating's FLITE Mark;

3

>Claim Three:  Ohio Revised Code § 4165.01, *et seq.*—Ohio Deceptive Trade Practices Act;
>
>Claim Four:  Unfair Competition;
>
>Claim Five:  Accounting; and
>
>Claim Six:  Declaratory Judgment.

(Doc. 1 at PageID 15–22.)

### 2. Encore's Answer and Counterclaim

On March 7, 2017, Encore filed its Answer and Counterclaim.  Encore asserts twelve affirmative defenses in the Answer including the following three relevant to the pending motions:

<u>Ninth Affirmative Defense</u>

>Buzz Seating's claims are barred because Buzz Seating has not used the name "Flite" in regions of the United States, and Encore has senior rights in the mark in those regions.
>
>\* \* \* \*

<u>Eleventh Affirmative Defense</u>

>Buzz Seating's claims are barred because Buzz Seating has abandoned its rights in the alleged "FLITE" mark.

<u>Twelfth Affirmative Defense</u>

>Buzz Seating's claims are barred because Buzz Seating's use of the name "Flite" has been *de minimis* in regions of the United States.

(Doc. 8 at PageID 120–21.)[2]

Additionally, Encore asserts two alternative counterclaims.  In the first counterclaim, Encore asks the Court to declare that its FLITE executive chairs do not infringe upon Buzz Seating's FLITE stacking chairs.  In the second counterclaim, if the Court does not find non-

---

[2]  Encore alternates between "Flite" and "FLITE" when identifying the trademark.

infringement, Encore seeks the Court to direct the USPTO to reject Buzz Seating's Serial Application No. 85860663 and to find that it has senior rights in the mark FLITE in all states in which Buzz Seating did not have bona fide sales prior to Encore filing its Application Serial No. 85473489.  (*Id.* at PageID 122–24.)

### 3. Pending Motions

Three motions are pending before the Court.  First, Encore is moving the Court to dismiss Claim One of Buzz Seating's Complaint—the infringement of a registered trademark claim.  Encore asserts that the claim fails as a matter of law because Buzz Seating does not allege ownership of a federally registered trademark.  Buzz Seating opposes the dismissal motion.

Second, Buzz Seating moves to dismiss Encore's counterclaims based on the doctrines of res judicata and collateral estoppel.  Buzz Seating asserts that the issues raised in Encore's counterclaims were addressed and determined by the TTAB and cannot be re-litigated in this Court.

Third, Buzz Seating moves to strike Encore's Ninth, Eleventh, and Twelfth Affirmative Defenses.  It asserts that the issues raised in the affirmative defenses also were addressed and determined by the TTAB and cannot be re-litigated here.

## II. STANDARDS OF LAW

Federal Rule of Civil Procedure 12(b)(6) allows a party to move to dismiss a complaint or counterclaim for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  To withstand a dismissal motion, a claim must contain "more than labels and conclusions [or] a formulaic recitation of the elements of a cause of action."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Courts do not require "heightened fact pleading of specifics, but only enough facts to state a claim for relief that is plausible on its face."  *Id.* at 570.

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A district court examining the sufficiency of a complaint or counterclaim must accept the well-pleaded allegations stated therein as true.  *Id.*; *DiGeronimo Aggregates, LLC v. Zemla*, 763 F.3d 506, 509 (6th Cir. 2014).  A district court also "may consider exhibits attached [to the complaint], public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the complaint and are central to the claims contained therein, without converting the motion to one for summary judgment." *Rondigo, L.L.C. v. Twp. of Richmond*, 641 F.3d 673, 681 (6th Cir. 2011) (internal quotation and citation omitted).

Rule 12(f) authorizes a district court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  Fed. R. Civ. P. 12(f).  "Motions to strike are viewed with disfavor and are not frequently granted." *Operating Eng'rs Loc. 324 Health Care Plan v. G & W Const. Co.*, 783 F.3d 1045, 1050 (6th Cir. 2015); *see also Mapp v. Bd. of Ed. of the City of Chattanooga, Tenn.*, 319 F.2d 571, 576 (6th Cir. 1963) (recognizing strike orders as a relatively "drastic remedy to be resorted to only when required for the purposes of justice" or "when the pleading to be stricken has no possible relation to the controversy").  Although motions to strike can "serve a useful purpose by eliminating insufficient defenses[,]" a district court should strike only defenses "so legally insufficient that it is beyond cavil that defendants could not prevail on them." *U.S. v. Pretty Prods., Inc.*, 780 F. Supp. 1488, 1498 (S.D. Ohio 1991) (citation omitted).

### III.     ANALYSIS

### A.     Encore's Motion to Dismiss (Doc. 7)

Encore moves to dismiss Claim One of the Complaint—the infringement of a registered trademark claim.  Buzz Seating alleges in Claim One that Encore's use of the FLITE trademark infringes upon Buzz Seating's superior rights in the trademark in violation of the Lanham Trademark Act, 15 U.S.C. § 1114.  (Doc. 1 at PageID 15–18.)  The Lanham Act provides in relevant part as follows:

> (1) Any person who shall, without the consent of the registrant--
>
>> (a) use in commerce any reproduction, counterfeit, copy, or colorable imitation *of a registered mark* in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive; or
>>
>> (b) reproduce, counterfeit, copy, or colorably imitate *a registered mark* and apply such reproduction, counterfeit, copy, or colorable imitation to labels, signs, prints, packages, wrappers, receptacles or advertisements intended to be used in commerce upon or in connection with the sale, offering for sale, distribution, or advertising of goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive,
>
> shall be liable in a civil action by the registrant for the remedies hereinafter provided.  Under subsection (b) hereof, the registrant shall not be entitled to recover profits or damages unless the acts have been committed with knowledge that such imitation is intended to be used to cause confusion, or to cause mistake, or to deceive.

15 U.S.C. § 1114(1) (emphasis added).

Encore asserts that Buzz Seating's trademark infringement claim must be dismissed as a matter of law.  The Lanham Act provides that only owners of registered trademarks can assert a claim for trademark infringement pursuant to § 1114(1)(a) & (b).  *See Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009) (listing elements of a trademark infringement claim as ownership of a registered trademark, use of the mark in commerce, and likelihood of confusion);

7

*see also Wal-Mart Stores, Inc. v. Samara Bros., Inc.*, 529 U.S. 205, 209 (2000) (stating that registration of a mark enables the owner to sue an infringer under § 1114); *Fuji Kogyo Co., Ltd. v. Pacific Bay Int'l, Inc.*, 461 F.3d 675, 682 (6th Cir. 2006) (same).[3] Buzz Seating has not alleged in the Complaint that it owns a registered trademark for FLITE.

Buzz Seating, nonetheless, asserts that its trademark infringement claim should be deemed sufficient for purposes of Rule 12(b)(6). Buzz Seating points out that its Application Serial No. 85860663 to register the mark FLITE is pending. However, it cites to no authority that a trademark applicant can assert a § 1114(1) claim. The Court concludes that Buzz Seating's trademark infringement claim fails as a matter of law because Buzz Seating does not own a registered trademark. *See Samara Bros.*, 529 U.S. at 209; *Hensley Mfg.*, 579 F.3d at 609; *Fuji Kogyo Co.*, 461 F.3d at 682.

Accordingly, the Court will grant Encore's Motion to Dismiss as to Claim One of the Complaint for trademark infringement pursuant to 15 U.S.C. § 1114. Claim One is dismissed without prejudice to re-filing if and when Buzz Seating obtains a registered trademark for FLITE.

**B.     Buzz Seating's Motion to Dismiss Counterclaim (Doc. 12)**

   **1.     Non-Infringement Counterclaim**

Encore has asserted two alternative claims for relief in its Counterclaim. In the first counterclaim, Encore seeks a declaratory judgment of non-infringement arguing specifically that there is "no likelihood of confusion" between Encore's FLITE executive chairs and Buzz Seating's FLITE side chairs. (Doc. 8 at PageID 123.) Buzz Seating moves to dismiss the

---

[3] The owner of an unregistered mark can file a suit for infringement regarding a false designation of origin or false description under the Lanham Act, 15 U.S.C. § 1125. *See Fuji Kogyo Co.*, 461 F.3d at 683. Encore does not move to dismiss Buzz Seating's Count Two claim based on § 1125.

counterclaim on the grounds that the non-infringement claim is barred by res judicata (also known as claim preclusion) and collateral estoppel (also known as issue preclusion). "Res judicata bars the relitigation of the same claim or cause of action while collateral estoppel bars the relitigation of the same issue." *Drummond v. Comm'r of Soc. Sec.*, 126 F.3d 837, 840 (6th Cir. 1997). The Court will first examine whether the non-infringement counterclaim is barred by issue preclusion.

Issue preclusion enforces the principle that once a matter is resolved between two parties by a court, that matter is resolved for all time between those parties. The Supreme Court has adopted the Restatement (Second) of Judgments regarding the ordinary elements of issue preclusion. *B & B Hardward, Inc. v. Hargis Industs., Inc.*, 135 S. Ct. 1293, 1303 (2015). Subject to certain exceptions, "[w]hen an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim." *Id.* (quoting Restatement (Second) of Judgments § 27, p. 250 (1980)). Issue preclusion applies to disputes pending before an administrative agency and a court when the administrative agency is acting in a judicial capacity, resolves disputed issues of fact, and the parties are given an adequate opportunity to litigate. *Id.*

> Courts in the Sixth Circuit apply a four-part test for issue preclusion:
>
> 1) the precise issue raised in the present case must have been raised and actually litigated in the prior proceeding;
>
> 2) determination of the issue must have been necessary to the outcome of the prior proceeding;
>
> 3) the prior proceeding must have resulted in a final judgment on the merits; and
>
> 4) the party against whom estoppel is sought must have had a full and fair opportunity to litigate the issue in the prior proceeding.

*Sumeru Health Care Grp., L.C. v. Hutchins*, 657 F. App'x 381, 385 (6th Cir. 2016) (citation omitted). There is no dispute that the TTAB decision qualified as a final judgment on the merits and that both parties had a full and fair opportunity to litigate the relevant infringement issues before the TTAB.

Buzz Seating asserts that the issue of likelihood of confusion was actually litigated and adjudicated before the TTAB in the proceeding for Opposition No. 91210838 regarding Encore's Application Serial No. 85473489. Encore argued in its Applicant's Brief filed with the TTAB that "there is no likelihood of confusion because Buzz Beating's FLITE stacking chairs are vastly different from Encore's FLITE executive chairs, are not sold to the same customers, and do not compete in the marketplace." (Doc. 18-1 at PageID 223.) Encore argued that the factors set forth in *Application of E.I. DuPont de Nemours & Co.*, 476 F.2d 1357 (C.C.P.A. 1973),[4]

---

[4] The *DuPont* court set forth the following factors:

> (1) The similarity or dissimilarity of the marks in their entireties as to appearance, sound, connotation and commercial impression.
>
> (2) The similarity or dissimilarity and nature of the goods or services as described in an application or registration or in connection with which a prior mark is in use.
>
> (3) The similarity or dissimilarity of established, likely-to-continue trade channels.
>
> (4) The conditions under which and buyers to whom sales are made, i. e. "impulse" vs. careful, sophisticated purchasing.
>
> (5) The fame of the prior mark (sales, advertising, length of use).
>
> (6) The number and nature of similar marks in use on similar goods.
>
> (7) The nature and extent of any actual confusion.
>
> (8) The length of time during and conditions under which there has been concurrent use without evidence of actual confusion.
>
> (9) The variety of goods on which a mark is or is not used (house mark, "family" mark, product mark).
>
> (10) The market interface between applicant and the owner of a prior mark:
>
>> (a) a mere "consent" to register or use.

weighed against a finding of likelihood of confusion. (*Id.* at PageID 229.) Specifically, it argued that the similarity of the mark, similarity of the goods, marketing channels used, how sales are made, and nature and extent of actual confusion factors weighed against a finding of likelihood of confusion. (*Id.* at PageID 229–32.)

The TTAB agreed that the *DuPont* factors were controlling, but it concluded that a likelihood of confusion did exist. (Doc. 1-1 at PageID 34–40.) It focused its analysis on whether Encore's goods, as identified in its Application Serial No. 85473489, specifically "Office furniture, including chairs," were likely to cause confusion. (*Id.* at PageID 26, 36, 40.) The TTAB examined the similarity of the marks, the similarity of the goods, the channels of trade, how sales are made, actual confusion, and Encore's good faith under the "catch-all" last factor. (*Id.* at 34–40.) The TTAB concluded as follows:

> In view of the marks being identical, and the goods and channels of trade being legally identical, we find that Applicant's use of FLITE far "Office furniture, including chairs" is likely to cause confusion with Opposer's previously used and not abandoned mark FLITE for stacking or side chairs.

(Doc. 1-1 at PageID 40.) Therefore, the elements of issue preclusion appear to be satisfied as to the likelihood of confusion aspect of infringement.

---

       (b) agreement provisions designed to preclude confusion, i. e. limitations on continued use of the marks by each party.

       (c) assignment of mark, application, registration and good will of the related business.

       (d) laches and estoppel attributable to owner of prior mark and indicative of lack of confusion.

(11) The extent to which applicant has a right to exclude others from use of its mark on its goods.

(12) The extent of potential confusion, i. e., whether *de minimis* or substantial.

(13) Any other established fact probative of the effect of use.

*DuPont*, 476 F.2d at 1361.

Nonetheless, Encore argues that issue preclusion does not apply to block its non-infringement counterclaim. Encore does not dispute that the likelihood of confusion standard used for purposes of trademark registration is the same standard to be applied for purposes of trademark infringement. *See B & B Hardware*, 135 S. Ct. at 1307. However, Encore argues that the TTAB considered only whether the broad category of goods *identified in its Application* were likely to cause confusion, but here it is arguing that the specific executive chairs *actually sold* under the FLITE mark are not likely to cause confusion when compared to Buzz Seating's side chairs. Encore argues that the Supreme Court instructed in *B & B Hardware* that issue preclusion does not apply when a mark owner uses its mark in a materially different way than was disclosed in its Application:

> If a mark owner uses its mark in ways that are materially the same as the usages included in its registration application, then the TTAB is deciding the same likelihood-of-confusion issue as a district court in infringement litigation. By contrast, if a mark owner uses its mark in ways that are materially unlike the usages in its application, then the TTAB is not deciding the same issue. Thus, if the TTAB does not consider the marketplace usage of the parties' marks, the TTAB's decision should "have no later preclusive effect in a suit where actual usage in the marketplace is the paramount issue." 6 McCarthy § 32:101, at 32–246.
>
> Materiality, of course, is essential—trivial variations between the usages set out in an application and the use of a mark in the marketplace do not create different "issues," just as trivial variations do not create different "marks." *See generally* 4 *id.*, § 23:50, at 23–265 (explaining that "adding descriptive or non-distinctive" elements to another's mark generally will not negate confusion). Otherwise, a party could escape the preclusive effect of an adverse judgment simply by adding an immaterial feature to its mark. That is not the law.

*Id.* at 1308.

Encore has not established, however, that *B & B Hardware* cuts in its favor in this instance. The Supreme Court in *B & B Hardware* discussed instances where there were material differences between usages in the application and actual usage. Encore has not identified *material* differences between the usages identified in its Application Serial No. 85473489 and

12

Encore's actual usage. The Court does not consider the difference between "Office furniture, including chairs" and "executive chairs" to be material. Rather, "Office furniture, including chairs" encompasses the executive chairs. Moreover, the TTAB also did not consider the difference to be material. It considered and rejected the basic argument that Encore is making here:

> [Encore] argues that its chairs are different from [Buzz Seating's] because [Encore's] are "premium executive chairs sold to corporate customers for use behind a desk or in a conference room," and that "a person purchasing a stacking chair such as [Buzz Seating's] Flite chair would not buy an executive chair and vice-versa." Leaving aside the crucial fact that Applicant [Encore]has not limited its identification of goods to executive chairs, and that the goods as identified in its application are legally identical to [Buzz Seating's] chairs, *the specific differences that Applicant points out between its executive chairs and [Buzz Seating's] side chairs do not avoid a likelihood of confusion. The question is not whether consumers will confuse the chairs, but whether they will be confused as to the source of the goods. The evidence shows that executive chairs and side chairs are closely related. They are complementary, in that they can be used in the same office. As Mr. O'Hara [Buzz Seating's President] testified, "you may have an executive chair behind your desk and two side chairs on the other side of your desk as companion chairs." They can also be used for the same purpose, for example, as seating in a conference room.* Further, [Buzz Seating] itself sells both executive chairs and side chairs, and in the case of its MELO chair, uses the same mark on both. As a result, consumers who are familiar with [Buzz Seating's] FLITE side chair, upon seeing the identical mark FLITE for an executive chair, are likely to believe that [Buzz Seating] has similarly expanded its line under this mark.
>
> As for the channels of trade, as we previously said, the legally identical goods must be presumed to be sold in the same channels of trade. Even apart from that presumption, the evidence shows that both [Buzz Seating] and [Encore] sell their chairs through independent representatives to dealers or distributors who, in turn, sell them to the ultimate users. Competing companies' chairs, including executive chairs and side chairs, can be sold by the same dealers or distributors to the same customers. In this connection, Mr. O'Hara [Buzz Seating's President] testified that [Buzz Seating's] customers include "corporate America" and Mr. Burgess [Encore's Executive Vice President and co-owner] testified that Applicant's customers include "corporate companies."

13

(Doc. 1-1 at PageID 36–37 (emphasis added and internal citations omitted).) Therefore, the TTAB concluded that there was a likelihood of confusion when comparing Encore's specific executive chairs with Buzz Seating's side chairs.

Even if this Court were persuaded that there was a material difference between "Office furniture, including chairs" and "executive chairs," and even if the TTAB discussion on executive chairs specifically was dicta and not necessary to its determination, Encore's claim still would be barred under a claim preclusion analysis. Claim preclusion bars the litigation of a claim based on a prior adjudication when four elements are met: (1) the prior decision was a final decision on the merits; (2) the present action is between the same parties or their privies as those to the prior action; (3) the claim in the present action was or should have been litigated in the prior action; and (4) an identity of the causes of action exists between the prior and present actions. *See Rawe v. Liberty Mut. Fire Ins. Co.*, 462 F.3d 521, 528 (6th Cir. 2006); *Mitchell v. Chapman*, 343 F.3d 811, 819 (6th Cir. 2003). The Sixth Circuit has explained that if two claims arise from the same transaction or are based on a common nucleus of operative facts, then the claims share an identity and should be brought in the same suit. *Nguyen ex rel. U.S. v. City of Cleveland,* 534 F. App'x 445, 451 (6th Cir. 2013).

Encore could have, and in fact attempted to, focus the TTAB on executive chairs specifically. It offered to consent "to amendment of its Application to recite [executive chairs with specific features]." (*Id.* at PageID 29.) The TTAB declined to permit the amendment because it would have been untimely and would have prejudiced Buzz Seating. (*Id.*) Encore had the right to request a rehearing or reconsideration of the TTAB decision, but did not exercise that right. *See* 37 C.F.R. § 2.129(c).[5] Likewise, it could have appealed the TTAB decision to the

---

[5] The regulation states as follows:

14

United States Court of Appeals for the Federal Circuit or to any United States District Court where venue was permissible, but did not do so. *Kellogg Co. v. Toucan Golf, Inc.*, 337 F.3d 616, 622–23 (6th Cir. 2003) (citing 15 U.S.C. § 1071(b)(1)). The Court concludes that Encore's claim based on executive chairs specifically was or could have been litigated in the administrative proceedings. The elements of claim preclusion are satisfied.

Accordingly, the Court will dismiss the non-infringement counterclaim as barred by issue or claim preclusion.

### 2. Priority of Registration

Encore asserts a priority of registration counterclaim in the alternative if the non-infringement counterclaim fails. Encore argues in this claim that Buzz Seating is not entitled to a nationwide registration of the mark because Encore has a priority of use of the mark FLITE in some states. Specifically, Encore seeks a declaration that Buzz Seating is not entitled to a nationwide registration because it has used the mark in only a handful of states, and because Encore has senior rights in the mark in all states in which Buzz Seating did not have bona fide sales prior to November 15, 2011 or where Buzz Seating's use of the mark FLITE has been *de minimis*.

Buzz Seating asserts that the counterclaim should be dismissed because the issue of priority of use was litigated and resolved before the TTAB. The Court will not address Buzz Seating's particular argument for dismissal, however, because a jurisdictional issue needs to be

---

(c) Any request for rehearing or reconsideration or modification of a decision issued after final hearing must be filed within one month from the date of the decision. A brief in response must be filed within twenty days from the date of service of the request. The times specified may be extended by order of the Trademark Trial and Appeal Board on motion for good cause.

37 C.F.R. § 2.129(c).

addressed first. Encore asserts that the Court has authority pursuant to the Lanham Act, 15 U.S.C. § 1119, to determine the right to registration of a trademark. (Doc. 8 at PageID 124.) Generally, district courts have concurrent jurisdiction over registration and cancellation of trademarks under 15 U.S.C. § 1119. *See W&G Tenn. Imports, Inc. v. Esselte Pendaflex Corp.*, 769 F. Supp. 264, 266 (M.D. Tenn. 1991). Section 1119 provides as follows:

> In any action *involving a registered mark* the court may determine the right to registration, order the cancelation of registrations, in whole or in part, restore canceled registrations, and otherwise rectify the register with respect to the registrations of any party to the action. Decrees and orders shall be certified by the court to the Director, who shall make appropriate entry upon the records of the Patent and Trademark Office, and shall be controlled thereby.

15 U.S.C. § 1119 (emphasis added).

Neither Encore nor Buzz Seating has a nationwide registration for the mark FLITE at this time. Buzz Seating has Application Serial No. 85860663 pending before the USPTO, and Encore has Application Serial No. 87245914, an application for concurrent use, pending before the USPTO. This is not, therefore, an "action involving a registered mark" as set forth is § 1119. Based on the Court's initial research, § 1119 does not extend to give the Court jurisdiction over registration issues concerning unregistered trademarks. As one treatise explained, § 1119 "should not apply in cases in which *none* of the parties owns a federal trademark registration and there is, at best, an application for registration on file[,]" nor should it "permit a court to cancel a pending trademark application." 1-4 Gilson on Trademarks § 4.10 (2017). Neither party has briefed this jurisdictional issue so the Court will defer ruling on the Encore's second counterclaim at this time. The parties are ordered to file supplemental briefs no longer than five pages on this jurisdictional issue within two weeks of the date of this Order.

**C.     Buzz Seating's Motion to Strike Affirmative Defenses (Doc. 13)**

16

Buzz Seating also moves to strike Encore's Ninth, Eleventh, and Twelfth Affirmative Defenses on the grounds of issue preclusion. Two of the affirmative defenses relate to whether Buzz Seating has priority use of the FLITE mark in certain regions of the United States and one affirmative defense is whether Buzz Seating has abandoned its right to use the FLITE mark. These affirmative defenses appear to be directly targeted to Buzz Seating's Count II claim for infringement of a non-registered mark pursuant to 15 U.S.C. § 1125.

Encore asserts in the Ninth Affirmative Defense that Buzz Seating has not used the mark FLITE in certain regions of the United States and, therefore, Encore has senior right in those regions. (Doc. 8 at PageID 120.) Buzz Seating argues that the defense should be stricken because the TTAB addressed this issue when it held that 15 U.S.C. § 1502(d) did not require Buzz Seating to prove priority of use on a state-by-state basis. The Court disagrees.

The TTAB stated that 15 U.S.C. § 1502(d) required Buzz Seating to establish prior use *in* the United States, not *throughout* the United States, in order to defeat Encore's Application Serial No. 85473489 for registration of the FLITE mark. (Doc. 1-1 at PageID 32–33.) The issue before the Court on both Buzz Seating's claim for infringement of a non-registered mark and Encore's affirmative defense is different. Priority of use is determined on a regional basis for non-registered marks. *See Tana*, 611 F.3d at 780 (stating that protection of non-registered marks extends to territory in which the non-registered mark is known); *see also* 5 McCarthy on Trademarks and Unfair Competition § 26:2 (same). The TTAB did not examine on a region-by-region basis whether Buzz Seating had priority of use. The Court will not strike the Ninth Affirmative Defense on the basis of issue preclusion.

Encore asserts in the Eleventh Affirmative Defense that Buzz Seating abandoned its rights in the FLITE mark. (Doc. 8 at PageID 121.) Buzz Seating moves to strike the affirmative

17

defense on the grounds that the TTAB determined this issue directly.  The Court agrees.  Encore argued to the TTAB that Buzz Seating had abandoned the FLITE mark in at least some states.  (Doc. 1-1 at 33–34.)  The TTAB disagreed.  It instructed that abandonment was not determined on a state-by-state basis, it found that Buzz Seating had "made continuous use of the mark FLITE on chairs in the United States at least since 2004[,]" and it concluded that Buzz Seating had "not abandoned its rights in the mark."  (*Id.* at PageID 34.)  The Court will strike the affirmative defense as barred by issue preclusion.

Finally, Encore asserts in the Twelfth Affirmative Defense that Buzz Seating only had *de minimis* use of the mark FLITE in certain regions of the United States.  (Doc. 8 at PageID 121.)  Buzz Seating argues that the TTAB decided this issue when it held that Encore's "argument that [Buzz Seating] has only made *de minimis* use of its mark in some states fails" because the sales records established that "sales made by [Buzz Seating] evidence use in the United States that constitutes bona fide use in the course of trade."  (Doc. 1-1 at PageID 33 n. 5.)  Significantly, the TTAB made these remarks in dicta following its conclusion that priority is not determined on a state-by-state basis when an applicant seeks an unrestricted nationwide registration of its trademark.  (*Id.* at PageID 33.)  The TTAB did not determine whether Buzz Seating had only *de minimis* use of the trademark in some states because it held that the company's use of the trademark in the United States as a whole was bona fide.  The issue before this Court is different.  Encore is asserting an affirmative defense to Buzz Seating's claim for infringement of a non-registered trademark.  Priority of use is determined on a regional basis for non-registered marks.  The TTAB did not determine the issue of whether Buzz Seating had mere *de minimis* use of the trademark in certain regions.  The Court will not strike the Twelfth Affirmative Defense on the basis of issue preclusion.

**IV.     CONCLUSION**

Defendant's Motion to Dismiss Claim One of the Complaint (Doc. 7) is **GRANTED**. Plaintiff's Motion to Dismiss Counterclaims (Doc. 12) is **GRANTED IN PART AND HELD IN ABEYANCE IN PART**.  Encore's first counterclaim is dismissed.  The parties are to submit supplemental briefs on the jurisdictional issue regarding Encore's second counterclaim within two weeks of the date of this Order.  Finally, Plaintiff's Motion to Strike Affirmative Defenses (Doc. 13) is **GRANTED IN PART AND DENIED IN PART**.  The Eleventh Affirmative Defense is stricken, but Encore can proceed on the Ninth and the Twelfth Affirmative Defenses.

IT IS SO ORDERED.

DATED this 15th day of June 2017.

                              BY THE COURT:

                              S/Susan J. Dlott
                              Judge Susan J. Dlott